MANUFACTURER'S NATIONAL BANK OF DETROIT, PERSONAL REP., ET AL., PETITIONERS, *v.* ERIE COUNTY ROAD COMMISSION; HURON TOWNSHIP ET AL., RESPONDENTS.

[Cite as *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.* (1992), 63 Ohio St.3d 318.]

(No. 91–1302—Submitted January 21, 1992—Decided April 1, 1992.)

*Sullivan, Ward, Bone, Tyler & Asher, P.C., Sheri B. Cataldo* and *Michelle A. Thomas,* for petitioners.

*Jones & Bahret, Willis P. Jones, Jr.* and *Sarah A. McHugh,* for respondents Huron Township and Huron Township Board of Trustees.

*Flynn, Py & Kruse Co., L.P.A.,* and *John A. Coppeler,* for respondent Robert Boos.

*Murray & Murray Co., L.P.A.,* and *James T. Murray,* in support of petitioners for *amicus curiae,* Carol Miller.

HERBERT R. BROWN, J. The Sixth Circuit Court of Appeals has certified the following questions to us:

"(1) Does a political subdivision's statutory duty under R.C. 2744.02 to keep a roadway 'free from nuisance' require the use of reasonable care to ensure that corn growing within a rural roadway's right-of-way does not obstruct the visibility of drivers on the roadway such that drivers' view of cross-traffic at intersections is impaired?

"(2) What, if any, duty of care does a possessor of rural agricultural land owe to those on public roads abutting the land for physical harm caused by an obstruction created by cultivated crops on the land?"

As a state-law question certified by federal court, the issues before us are questions of law, not of fact. Although our decision may affect the outcome of the federal litigation, the federal court hears and decides the cause by applying the law, as we determine it, to the facts of the case. *Scott v. Bank One Trust Co., N.A.* (1991), 62 Ohio St.3d 39, 42, 577 N.E.2d 1077, 1079.

I

Township's Statutory Duty of Care

Petitioners claim that the cornfield, growing in the right-of-way, constituted an actionable nuisance because it obstructed Mrs. Murray's vision to the extent that it rendered the intersection unsafe. Petitioners predicate the township's liability on R.C. 2744.02(B)(3), which provides in part:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivision open, in repair, and *free from nuisance* * * *." (Emphasis added.)

Because the General Assembly recently enacted R.C. 2744.02(B)(3), no case law under that statute has yet developed to construe a political subdivision's duty in the circumstances presented to us here. Therefore our analysis begins with cases arising under R.C. 723.01, a similar statute using the words "free from nuisance." [1]

R.C. 723.01 obligates municipal corporations to keep highways and streets open for the purposes for which they were designed and built—to afford the public a safe means of travel. *Fankhauser v. Mansfield* (1969), 19 Ohio St.2d 102, 108, 48 O.O.2d 103, 106–107, 249 N.E.2d 789, 792–793; *Lovick v. Marion* (1975), 43 Ohio St.2d 171, 172, 72 O.O.2d 95, 96, 331 N.E.2d 445, 446; *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 130, 6 OBR 186, 188, 451 N.E.2d 1193, 1195; *Strunk v. Dayton Power & Light Co.* (1983), 6 Ohio St.3d 429, 430, 6 OBR 473, 475, 453 N.E.2d 604, 605. Like R.C. 723.01, R.C. 2744.02(B)(3) imposes on political subdivisions a duty of care to keep highways open and safe for public travel.

Furthermore, case law construing R.C. 723.01 has focused on whether the alleged nuisance rendered the roadway unsafe for the usual and ordinary modes of travel. *Lovick v. Marion, supra,* 43 Ohio St.2d at 172–173, 72 O.O.2d at 96–97, 331 N.E.2d at 446–447; *Dickerhoof v. Canton, supra,* 6 Ohio St.3d at 130–131, 6 OBR at 188–189, 451 N.E.2d at 1195–1196; *Strunk v. Dayton Power & Light Co., supra,* 6 Ohio St.3d at 430–431, 6 OBR at 475, 453 N.E.2d at 605–606.

The township claims that its duty under R.C. 2744.02(B)(3) to keep roadways free from nuisance applies only where the nuisance existed on the paved or travelled portion of the highway or where the nuisance interfered with a traffic or safety control device. We disagree.

The township's duty under R.C. 2744.02(B)(3) extends to conditions in the right-of-way that directly affect the highway's safety for the regular and ordinary course of traffic. The right-of-way is appropriated for a governmen-

---

1. R.C. 723.01, at the time pertinent herein, provided:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance."

tal purpose related to the highway. Although not in effect at the time of the accident, present R.C. 4511.01(UU)(2) is helpful and defines "right-of-way" as follows:

"A general term denoting land, property, or the interest therein, usually in the configuration of a strip, *acquired for or devoted to transportation purposes.* When used in this context, right-of-way includes the roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits *under the control of the state or local authority.*" (Emphasis added.)

In determining a township's duty under R.C. 2744.02(B)(3) or a municipality's under R.C. 723.01, the focus should be on whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road.

Contrary to the township's assertion, prior case law has recognized that a municipal corporation's liability under R.C. 723.01 is not limited to physical conditions in the roadway itself. In *Fankhauser, supra,* we held that a malfunctioning traffic signal can be a nuisance to orderly urban street travel, even though not physically part of the roadway. See, also, *Robert Neff & Sons v. Lancaster* (1970), 21 Ohio St.2d 31, 50 O.O.2d 80, 254 N.E.2d 693 (overhanging tree limb impeding ordinary traffic could be nuisance within the meaning of R.C. 723.01). We have also recognized that a municipal corporation may be liable for injuries resulting from its failure to keep the shoulder of the highway in repair and free from nuisance where such defect renders the highway unsafe for normal travel. *Dickerhoof, supra.*

The township directs our attention to *Strunk, supra,* in which we refused to extend a municipality's duty under R.C. 723.01 past the portion of the highway considered the berm or shoulder, and held that as a matter of law a light pole located adjacent to a roadway or the shoulder was not a portion of the highway within the meaning of R.C. 723.01.

On closer examination, however, the court in *Strunk* focused on whether the light pole was a condition that made the roadway unsafe for the usual and ordinary course of travel. In *Strunk,* the placement of the light pole adjacent to the roadway's shoulder did not jeopardize the safety of ordinary traffic on the highway. To the extent the language in *Strunk* is inconsistent with our holding today, our opinion in *Strunk* is hereby modified.

The roadway, the space immediately above the roadway, the shoulder, the berm, and the right-of-way are all under the control of the political subdivision. See present R.C. 4511.01(UU)(2). The township has a duty to keep the areas within its control free from nuisance, *i.e.,* conditions that directly jeopardize the safety of traffic on the highway. Where the township fails in its duty, it may be liable for injuries proximately caused by the nuisance.

A permanent obstruction to a driver's visibility can be a nuisance which makes the usual and ordinary course of travel *on the roadway* unsafe. A visibility obstruction can be as hazardous to the highway's safety as a malfunctioning traffic light, a pothole in the roadway, or a rut in the shoulder.[2] This is particularly true where a driver, stopped at an intersection, is unable to see approaching cross-traffic. The relevant focus is on the *effect* of the obstruction on the highway's safety, not on the *nature* of the particular obstruction. Whether the alleged obstruction in the present case (a cornfield) constitutes a nuisance which makes the highway unsafe and whether this was the proximate cause of the accident which occurred are questions upon which we express no opinion because such determinations require findings of fact.

Accordingly we hold that a permanent obstruction to visibility in the right-of-way, which renders the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable under R.C. 2744.02(B)(3).

## II

### Landowner Liability

We next consider the duty of care owed by an owner or possessor of rural agricultural land to persons travelling on public roads abutting the land.

As a general rule a possessor of land may use the land in any way that does not invade the rights of others. *Heckert v. Patrick* (1984), 15 Ohio St.3d 402, 403, 15 OBR 516, 517, 473 N.E.2d 1204, 1206; *Hay v. Norwalk Lodge, B.P.O.E.* (1951), 92 Ohio App. 14, 18, 49 O.O. 189, 191, 109 N.E.2d 481, 484.

In this case, however, petitioners are seeking to hold respondent Boos liable for the use of land that was not under his exclusive control, *i.e.*, land lying within the right-of-way. The right-of-way was appropriated for highway purposes and is *under the control of the state or local authority.* See present R.C. 4511.01(UU)(2), and Part I, *supra.* From the facts certified to us by the federal court, it is unclear whether the township has title to the right-of-way or whether the right-of-way is an easement. The distinction, however, is irrelevant to our decision since in either case the right-of-way is under the control of the state or local government. Therefore, Boos was not free to use the right-of-way as he pleased. See, also, *Ohio Bell Tel. Co. v. Watson Co.* (1925), 112 Ohio St. 385, 389, 147 N.E. 907, 908; *Friedman Transfer &*

---

2. Our decision today does not imply that a political subdivision may be held liable for a *temporary* obstruction to visibility such as an illegally parked car. See *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 183, 543 N.E.2d 1242, 1247.

*Constr. Co. v. Youngstown* (1964), 176 Ohio St. 209, 212–213, 27 O.O.2d 91, 93, 198 N.E.2d 661, 664.

Growing crops in the right-of-way serves no highway purpose. Furthermore, if the crops obstruct a driver's vision in a way that creates a hazard to safe travel on the highway, the usage is inconsistent with the right-of-way's purpose. Again we make no factual determination with respect to whether the crops grown by Boos constitute such an obstruction. Nor do we impose any duty upon a landowner for obstructions to visibility located on land that is not within the right-of-way.

Respondent Boos argues that requiring a land user to determine exactly where the right-of-way lines are located places too great a burden on the land user. However, a landowner or occupier is under an obligation to know the boundaries of the property. The border of the right-of-way is a boundary line like any other.

Accordingly we hold that where the abutting landowner or occupier uses the highway right-of-way in a manner inconsistent with a highway purpose, and where such usage constitutes an unreasonable hazard to the users of the highway, the landowner or occupier may be liable for damages proximately caused by the improper use of the right-of-way.

*Decision accordingly.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

MOYER, C.J., concurs in part and dissents in part.

MOYER, C.J., concurring in part and dissenting in part. While I concur in the majority's decision with regard to the duty of landowners and occupiers to the users of highways, I believe that the majority's expansion of liability for political subdivisions is unwarranted given the statutory scheme and the past decisions of this court. Therefore, I respectfully dissent.

Unlike the owners and occupiers of land, the duty of political subdivisions with regard to users of highways is created by statute. R.C. 2744.02(B)(3) limits the liability of political subdivisions to "failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivision open, in repair, and free from nuisance * * *." Although not defined in R.C. Chapter 2744, the terms "highway" and "street," the salient terms in this case, are defined in R.C. 4511.01(BB) as "the entire width within the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel." Such terms do not include the "right-of-way" as that term is defined at R.C. 4511.01(UU).

Further, this court has consistently limited application of similar statutes to nuisances in or on a roadway or which interfere with a traffic control device. *Dayton v. Taylor's Admr.* (1900), 62 Ohio St. 11, 56 N.E. 480 (no liability on the part of municipality to pedestrian who slipped into a catch basin adjacent to the street); *Black v. Berea* (1941), 137 Ohio St. 611, 19 O.O. 427, 32 N.E.2d 1 (city not liable for collision with mailbox located close to the pavement of the roadway because there was no nuisance as a matter of law); *Lovick v. Marion* (1975), 43 Ohio St.2d 171, 72 O.O.2d 95, 331 N.E.2d 445 (catch basin alongside road not a nuisance for which the city could be liable); *Strunk v. Dayton Power & Light Co.* (1983), 6 Ohio St.3d 429, 6 OBR 473, 453 N.E.2d 604 (city not liable for alleged nuisance created by a light pole adjacent to the roadway); and *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 543 N.E.2d 1242, paragraph one of the syllabus (illegally parked cars located on the side of a highway contributing to general traffic congestion do not constitute a nuisance giving rise to municipal liability under R.C. 723.01). In *Strunk,* this court stated the following:

"Appellant has failed to persuade a majority of this court that the city of Dayton possesses a duty with respect to property adjacent to the roadway. R.C. 723.01, which requires a municipal corporation to keep its streets and highways open, in repair and free from nuisance, includes only those aspects which affect the physical conditions of such roadways and does not extend to adjacent property. Having failed to show the existence of a duty, appellant has not established an actionable cause of negligence against the city of Dayton. See *Baier v. Cleveland Ry. Co.* (1937), 132 Ohio St. 388, 391 [8 O.O. 208, 209, 8 N.E.2d 1, 2]; *Bennison v. Stillpass Transit Co.* (1966), 5 Ohio St.2d 122 [34 O.O.2d 254, 214 N.E.2d 213], paragraph one of the syllabus." *Strunk, supra,* at 431, 6 OBR at 475–476, 453 N.E.2d at 606.

Today's decision by the majority is unreasonable and unworkable for political subdivisions. Questions concerning whether alleged nuisances are within a right-of-way, what ownership rights are involved, and what action, if any, the political subdivision may take with respect to alleged nuisances are just a few of the issues created by the change in the established law by the majority's decision. Because I believe that the rule of law previously adopted by this court that political subdivisions have no duty with respect to alleged nuisances not in or on a roadway or which interfere with a traffic control device is the correct interpretation of R.C. 2744.02(B)(3), I dissent.