[Cite as *Rastaedt v. Youngstown*, 2013-Ohio-750.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CAROL RASTAEDT, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| V. | ) | CASE NO. 12 MA 82 |
| | ) | |
| CITY OF YOUNGSTOWN, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 11CV662

JUDGMENT: Reversed. Judgment for Appellant.

APPEARANCES:
For Plaintiff-Appellee                  Attorney Phillip S. Arbie
                                        409 Harmon Avenue NW
                                        Suite D, Lower Level
                                        Warren, Ohio 44483

For Defendant-Appellant                 Attorney Kenneth P. Abbarno
                                        Attorney Holly Marie Wilson
                                        101 W. Prospect Ave., West
                                        Cleveland, Ohio 44115

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: February 25, 2013

DONOFRIO, J.

{¶1}   Defendant-appellant, the City of Youngstown, appeals from a Mahoning County Common Pleas Court judgment denying its motion for summary judgment on plaintiff-appellee's, Carol Rastaedt's, personal injury complaint.

{¶2}   On October 20, 2009, Rastaedt was crossing the street at the corner of Walnut Street and Adams Street in Youngstown.  While crossing the street, Rastaedt walked between two drains.   As she approached the sidewalk, Rastaedt's left foot slipped down a slope in the street that led to a sewer catch basin.  Her leg went into the sewer catch basin.  Rastaedt suffered injuries to her leg.

{¶3}   Thereafter, Rastaedt filed a complaint against the City alleging the City was responsible for her injuries because it had a duty to maintain its road in safe repair.

{¶4}   The City filed a motion for summary judgment asserting that it was entitled to political subdivision immunity.  The trial court denied the motion.  It found that the issue of "whether a condition exists within a political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road" is a matter for jury determination and is not appropriate for summary disposition.   It likewise found that whether the alleged defect is one of design or improper maintenance is properly determined by a jury.

{¶5}   The City filed a timely notice of appeal on May 4, 2012.

{¶6}   Initially, it should be noted that while generally the denial of a summary judgment motion is not a final, appealable order, in this case it is. Here the City's motion for summary judgment was based on the premise of governmental immunity. The Ohio Supreme Court has held: "When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 873 N.E.2d 878, 2007-Ohio-4839, at the syllabus.

{¶7}   The City now presents a single assignment of error, which states:

THE  TRIAL  COURT  ERRED  IN  DENYING  THE  CITY  OF

YOUNGSTOWN'S MOTION FOR SUMMARY JUDGMENT.

**{¶8}** The determination of whether a political subdivision is immune from suit is purely a question of law that is determined by a court prior to trial, generally on a summary judgment motion. *Schaffer v. Board of Cty. Commrs. of Carroll Cty., Ohio*, 7th Dist. No. 672, 1998 WL 886947 (Dec. 7, 1998), citing *Conely v. Shearer*, 64 Ohio St.3d 284, 292, 1992-Ohio-133.

**{¶9}** In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶10}** Whether a political subdivision is entitled to immunity is analyzed using a three-tiered process. *Green Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000). Under the first tier, R.C. 2744.02(A)(1) sets out the general rule that political subdivisions are not liable in damages. *Id.* at 556-57, 733 N.E.2d 1141. Under the second tier, the court must determine whether any of the exceptions to immunity set out in R.C. 2744.02(B) apply. *Id.* at 557. Finally, under the third tier, if the court finds that any of R.C. 2744.02(B)'s exceptions apply, it must consider R.C. 2744.03, which provides defenses and immunities to liability. *Id.*

**{¶11}** Thus, we must begin our analysis under the first tier with the premise that the City is not liable in damages here.

{¶12} Under the second tier, Rastaedt contends that the City is not entitled to immunity based on R.C. 2744.02(B)(3). This exception to immunity states "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." R.C. 2744.02(B)(3).

{¶13} With this law in mind, we now turn to the City's arguments.

{¶14} First, the City argues the trial court erred in determining that an issue of fact remains as to whether or not the slope in the roadway was a design defect or attributable to improper maintenance. It asserts that Rastaedt's sole factual support for her claim is her testimony that the slope of the road leading to the catch sewer basin was too steep and too deep. The City argues that this claim necessarily implicates the design of the road and catch basin. This is important, the City points out, because if Rastaedt's injury was a result of the sewer system's design then it is immune from liability. If, however, Rastaedt's injury was a result of the City's failure to maintain the road, then the City is not immune from liability.

{¶15} Initially, we should point out the trial court found that whether any alleged defect was one of design or improper maintenance is properly determined by a jury. But as stated above, the determination of whether a political subdivision is immune from suit is purely a question of law that is determined by a court. *Schaffer*, 7th Dist. No. 672; *Conely*, 64 Ohio St.3d at 292. Thus, we will move on to consider the evidence before the trial court.

{¶16} In her deposition, Rastaedt stated the following.[1] As she was crossing Walnut Street after a class at Youngstown State University, Rastaedt's "foot slipped on the slope." (Dep. 27). She elaborated: "There was a slope leading to the catch basin, which it was dark, it was not really visible, and there was shadows, so I slipped. Looking back, I'm pretty sure that I slipped on like sandy gravel or something under my foot. I didn't really see it, but I felt something and then my foot

---

1 We note that the City only attached a portion of Rastaedt's deposition to its motion for summary judgment. It did not file a properly certified deposition with the trial court. However, neither Rastaedt nor the trial court takes issue with the incomplete deposition and Rastaedt also relies on it. Thus, we too will consider the partial deposition.

slipped into the storm drain." (Dep. 27-28). Rastaedt stated that the slope started approximately four feet away from the catch basin. (Dep. 31). Upon further questioning, Rastaedt stated that she did not see what she slipped on, she just "felt slipping." (Dep. 39). Her "best guess" was that she slipped on gravel. (Dep. 39). Upon being asked *if she believed the slope was what ultimately caused her to slip*, Rastaedt stated "yes." (Dep. 40).

{¶17} The Ohio Supreme Court addressed a similar issue many years ago in *Lovick v. Marion*, 43 Ohio St.2d. 171, 331 N.E.2d 445 (1975). In that case, Lovick was walking on the paved portion of the road when his foot slipped off the edge of the road and he fell down a gradually sloping concrete apron that connected the edge of the road and a catch basin located about six feet from the edge of the pavement. Lovick's right leg entered the catch basin and was injured. Lovick sued the City of Marion arguing the condition of the street and the catch basin were a nuisance in an area that the city was obligated to maintain. The jury found in Lovick's favor, but the appellate court reversed.

{¶18} On appeal to the Ohio Supreme Court, Lovick argued that the duty of a municipal corporation under R.C. 723.01 to keep its streets "open, in repair, and free from nuisance" included not only the street but also the catch basin and sloping drain adjacent to it. In affirming the appellate court's decision, the Court found, "the catch basin and drainage slope were not part of the paved or traveled portion of the street; they did not render the street unsafe for customary vehicular or pedestrian travel and did not cause injury to a person using the street in an expected and ordinary manner." *Id.* at 174.

{¶19} The facts in the case at bar are partially distinguishable from those in *Lovick* however. From the pictures submitted by the parties, it appears that the drainage slope is part of the paved part of the road. (Ex. B-6). As was the case in *Lovick* though, the catch basin clearly was not part of the road. Thus, the catch basin itself did not render the street unsafe.

{¶20} Moving beyond *Lovick*, Rastaedt stated the slope of the road was what ultimately caused her to fall. Pictures of the road were submitted that showed it is

cracked and broken in many spots. But Rastaedt does not allege that these cracks caused her to fall. Moreover, the area immediately in front of the catch basin, where the slope is located, is not cracked at all. Thus, Rastaedt's fall was not caused by the City's failure to maintain the road in a condition of safe repair.

{¶21} Second, the City argues that the trial court erred in determining that an issue of fact remains as to whether or not the slope of the road constitutes a nuisance. It points out that Rastaedt argued in her opposition to summary judgment that the slope of the road constituted a qualified nuisance that stripped the City of immunity. It states that the trial court's determination on this point was taken directly from nuisance law. However, the City states that the current version of R.C. 2744.02(B)(3) does not contain the "free from nuisance" language that the old version of R.C. 2744.02(B)(3) contained. Thus, the City contends that whether or not a defect in the road constituted a nuisance is no longer proper in considering whether a political subdivision is entitled to immunity.

{¶22} The Legislature amended R.C. 2744.02 in 2002, with the new version effective April 9, 2003. Prior to that time, R.C. 2744.02(B)(3) read: "political subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, *and free from nuisance.*" The current version of R.C. 2744.02(B)(3) reads: "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." Thus, in amending the statute, the Legislature did away with the requirement that political subdivisions keep roads "free from nuisance." Instead, political subdivisions are now liable for injuries caused by their negligent failure to "remove obstructions."

{¶23} The Ohio Supreme Court found the Legislature's amendments significant:

[W]e believe that the General Assembly purposely replaced the

phrase "free from nuisance" with "other negligent failure to remove obstructions." To find otherwise is to conclude that the legislature's action in amending the statute was a superfluous act.

We are persuaded that the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways.

*Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶25-26.  The Court went on to conclude that "for purposes of R.C. 2744.02(B)(3), an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so."  *Id.* at ¶30.

**{¶24}** In this case, the trial court found that summary judgment was not proper because "whether a condition exists within a political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road" is a matter for jury determination and not summary judgment.  The language used by the trial court is a quote from the Ohio Supreme Court in *Franks v. Lopez*, 69 Ohio St.3d 345, 348, 632 N.E.2d 502 (1994), where the Court was determining a township's duty with regard to potential nuisances.

**{¶25}** The trial court's reliance on this standard was misplaced.  As noted above, the Legislature amended R.C. 2744.02(B)(3) to specifically eliminate the "nuisance" exception to immunity.  And the Ohio Supreme Court found that the immunity exception now exists only for "obstructions" and not for "nuisances." *Howard*, at ¶30.  In the case at bar, Rastaedt does not allege that there was a potential obstruction in the road.  Instead, her claim is one of a nuisance, that being the slope to the catch basin.  Construing the facts in Rastaedt's favor, she slipped on the slope of the road, possibly on some gravel, that led to the catch basin.  She did not encounter an obstacle that blocked or clogged the road.  She may have encountered a condition that hindered the use of the road (the gravel on the sloped portion of the road).  However, even construing these facts as true, the condition

would only be a nuisance, for which the City is not liable.

**{¶26}** Moreover, even if we could somehow construe the facts in a way so that a slope in a road and possible gravel was an obstruction, summary judgment for the City would still be proper because Rastaedt offered no evidence that the City had notice of the allegedly dangerous condition.

**{¶27}** A municipal corporation can only be held liable for negligence in creating a faulty condition or in failing to repair, remove or guard against defects after receiving actual or constructive notice of the defects. *Wilson v. Cleveland*, 2012-Ohio-4289, 979 N.E.2d 356, ¶23 (8th Dist.), citing *Graves v. E. Cleveland*, 8th Dist. No. 70675, 1997 WL 35570, *2 (Jan. 30, 1997). To impute constructive notice on a municipality, the plaintiff "must show that the defect existed in such a manner and for a sufficient length of time that it could or should have been discovered, and that if it had been discovered, it would have created a reasonable apprehension of a potential danger.'" *Id.* at ¶25, quoting *Graves*.

**{¶28}** In this case, appellant offered no evidence that the City had either actual or constructive notice of the alleged dangerous condition.

**{¶29}** Because Rastaedt's fall was caused by the slope of the road into the catch basin, which is a potential design defect, because the City is not liable for any nuisance, and because there was no evidence of notice, the trial court should have granted the City's motion for summary judgment. Accordingly, the City's sole assignment of error has merit.

**{¶30}** For the reasons stated above, the trial court's decision is hereby reversed and summary judgment is entered in favor of the City.

Vukovich, J., concurs.

Waite, .J., concurs.