ESTATE OF DURHAM ET AL., APPELLANTS, *v.* CITY OF AMHERST ET AL., APPELLEES.

(Nos. 4267 and 4268—Decided
July 20, 1988.)

*David J. Murray* and *William H. Rider,* for appellants.
*Dennis M. O'Toole* and *Jerome J. Savoy,* for appellees.

CACIOPPO, J. On April 30, 1984, the deceased, Sidney B. Durham, was killed as he was driving down South Main Street in Amherst, Ohio, when a large tree fell on top of his automobile. A complaint was filed by plaintiff-appellant, Luverne Durham, individually and as executrix of her husband's estate. Named as defendants were the appellees, Virginia McMillan and the city of Amherst. A second complaint was filed against the same defendants by plaintiff-appellant, West American Insurance Company, as a subrogee, and the cases were thereafter consolidated by the trial court.

The plaintiffs alleged that the defendants had notice of the dangerous condition of the tree and were negligent in their failure to remove the tree, which was located on the tree lawn in front of McMillan's house. Both defendants filed motions for summary judgment which were granted by the trial court. The plaintiffs now appeal.

Durham's Assignments of Error

"I. The trial court erred in granting defendants' motions for a summary judgment because there are several issues of material fact upon which reasonable minds could disagree and defendants are not entitled to judgment as a matter of law.

"II. The trial court erred in granting the defendants' motions for a summary judgment because in so doing the court denied the plaintiffs their day in court."

West American's
Assignment of Error

"That the trial court erred in granting defendants' motions for summary judgment concluding that there were no issues of material fact upon which reasonable minds could disagree: several issues are presented which require determination by the ultimate trier of the facts."

We must assess the propriety of the trial court's grant of summary judgment to the city of Amherst as well as McMillan. We begin our review with the city.

The appellants' arguments as to the city focus on a purported easement which the city has to trim or remove trees on McMillan's tree lawn that could interfere with electrical lines. In essence, the appellants assert that the city had the power to remove trees, and may have even marked this particular tree for removal prior to the accident. From this easement, they attempt to derive a duty to the deceased who was driving down the street at the time of the accident. We find no such duty under the facts of this case.

Appellants' complaint stated a claim for common-law negligence. However, we will begin our analysis with the statutory duty imposed by R.C. 723.01:

"Municipal corporations shall have special power to regulate the use of the

streets. The legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance."

The first issue to be determined is whether the tree lawn on which this particular tree was located was within the purview of R.C. 723.01. Park strips or tree lawns between the curb and the sidewalk pavement are within the ambit of the foregoing statute. *Joseph* v. *Portsmouth* (1975), 44 Ohio St. 2d 155, 157, 73 O.O. 2d 456, 458, 339 N.E. 2d 622, 623 (citing *Barnesville* v. *Ward* [1911], 85 Ohio St. 1, 96 N.E. 937). However, the obligations imposed by R.C. 723.01 do not necessarily render the municipality liable. Trees, grass, and flowers growing on tree lawns are not obstructions or nuisances within the meaning of the statute. *Barnesville, supra,* paragraph two of the syllabus. See, also, *Zupancic* v. *Cleveland* (1978), 58 Ohio App. 2d 61, 12 O.O. 3d 213, 389 N.E. 2d 861 (scope and application of R.C. 723.01 to streets and highways are limited to actual physical structure of streets; nuisance must be defective condition of street itself). In *Strunk* v. *Dayton Power & Light Co.* (1983), 6 Ohio St. 3d 429, 6 OBR 473, 453 N.E. 2d 604, the Ohio Supreme Court held that a light pole adjacent to the roadway and the shoulder thereof was not within the purview of R.C. 723.01. The court further stated as follows:

"Appellant has failed to persuade a majority of this court that the city of Dayton possesses a duty with respect to property adjacent to the roadway. R.C. 723.01, which requires a municipal corporation to keep its streets and highways open, in repair and free from nuisance, includes only those aspects which affect the physical conditions of such roadways and does not extend to adjacent property. Having failed to show the existence of a duty, appellant has not established an actionable cause of negligence against the city of Dayton. See *Baier* v. *Cleveland Ry. Co.* (1937), 132 Ohio St. 388, 391 [8 O.O. 208]; *Bennison* v. *Stillpass Transit Co.* (1966), 5 Ohio St. 2d 122 [34 O.O. 2d 254], paragraph one of the syllabus.

"In the absence of a legal duty on the part of the municipality, appellant cannot recover against the city of Dayton even though the defense of sovereign immunity is not available. * * * The mere abrogation of immunity does not free a plaintiff from establishing the required elements of the alleged tortious conduct. We, therefore, conclude from the complaint that appellant can prove no set of facts entitling him to recover from the city of Dayton." *Strunk, supra,* at 431, 6 OBR at 475-476, 453 N.E. 2d at 606.

Based upon the analysis of the court in *Strunk,* we find that the appellants in the instant case can prove no set of facts entitling them to recovery from the city of Amherst, through either the statute or at common law. The affidavits and depositions of several city officials show that the tree was located on private property, and that the only interest the municipality had in that property was an easement for the maintenance of utility lines. There is no evidence in the record to the contrary. Accordingly, the grant of summary judgment to the city of Amherst is affirmed.

We now turn to the trial court's grant of summary judgment to McMillan, noting that the record contains no indication by the trial court as to the basis for its judgment.

Our first inquiry is whether there is an issue of fact as to any duty owed

by McMillan, as owner of the property upon which the tree was located, to the deceased. In *Heckert* v. *Patrick* (1984), 15 Ohio St. 3d 402, 15 OBR 516, 473 N.E. 2d 1204, the Supreme Court determined the duty of care owed to the traveling public by a rural property owner whose land abuts a highway and contains growing trees with limbs overhanging the traveled portion of the roadway. The court noted an exception to the general rule, set forth in the Restatement of the Law of Torts, that a possessor of land is not liable for physical harm caused to others outside of the land by a natural condition of the land:

"* * * This exception relates to growing trees with limbs overhanging a public street or highway. The law encompassing this exception varies rather markedly throughout the United States. However, it is generally stated that an owner of land abutting a highway may be held liable on negligence principles under certain circumstances for injuries or damages resulting from a tree or limb falling onto the highway from such property. * * *.

"Section 363(2) of the Restatement of Torts 2d, *supra*, at 258, specifically provides that a possessor of land in an *urban* area is subject to liability to persons using a public highway for physical harm arising from the condition of trees near the highway. The use of the term 'urban' in this section of the Restatement introduces yet a further variation in the application of the rules concerning a property owner's duty or responsibility. In addition, a caveat following Section 363(2) states that the drafters express no opinion as to whether the rule would apply to a possessor of land in a rural area. Accordingly, there appears to have developed a distinction throughout the United States that there is a lesser standard of care with

reference to rural, farm, timber, or little-used land as opposed to strictly urban property.

"In the main, the cases applying the distinction often state that the urban owner has a duty of reasonable care relative to the tree, including inspection to make sure that it is safe. The duty placed upon the urban landowner, who has only a few trees, is not a heavy burden. This is in contrast to the rural landowner who may have trees of forest dimensions which would impose a duty of immense proportions, and constitute an onerous burden. * * *" (Emphasis *sic*.) *Heckert, supra,* at 404-405, 15 OBR at 518, 473 N.E. 2d at 1207.

The Sixth District Court of Appeals applied *Heckert* to a case involving an urban landowner in *Woods* v. *Blodgett* (May 16, 1986), Erie App. No. E-85-35, unreported. In *Woods,* a tree limb fell onto the property of an adjacent landowner, damaging a parked automobile. Although both *Heckert* and *Woods* involved the falling limbs of trees as opposed to an entire tree, both courts discussed the general liability for harm caused by trees in unsound condition, and we can see no reason to distinguish between the harm and liability caused by a falling limb as opposed to a falling tree.

*Heckert* imposed a duty of reasonable care on owners of land adjoining highways in rural settings who had actual or constructive notice of a patently defective condition of a tree. We agree with the view taken by the court in *Woods, supra,* that "* * * the distinction made between rural and urban landowners and the greater duty placed on urban landowners [to inspect their property] reflects a recognition of the fact that it is not excessively burdensome to impose the duty of reasonable care to prevent injury from trees upon urban landowners who typically hold small parcels of land."*Id.*

at 4. We agree with the holding in *Woods* that a landowner in an urban area has a duty to exercise reasonable care to prevent an unreasonable risk of harm to others from decaying, defective, or unsound trees of which such landowner has actual or constructive notice.

The record in the instant case contains opposing affidavits of two tree experts which raise genuine issues of fact as to the condition of the tree and whether that condition was apparent. There further remains an issue of fact as to whether McMillan had actual or constructive notice of the tree's condition. In her deposition, McMillan testified that limbs had previously fallen from the tree, and that she had been so concerned about the tree that seven years prior to its falling, she had called the city to request that it be cut down.

Construing this evidence most strongly in favor of the appellants, we find that the trial court erred in granting summary judgment to defendant McMillan. Accordingly, the judgment of the trial court is affirmed as to defendant city of Amherst, and, as to defendant McMillan, the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

BAIRD, P.J., concurs.
QUILLIN, J., dissents.

QUILLIN, J., dissenting. Does the city own the street right-of-way in fee or merely an easement for street purposes? The rule in Ohio is that as to highways, the public acquires a mere easement; while as to municipal streets, the municipality acquires a fee in trust. 54 Ohio Jurisprudence 3d (1984) 357, Highways, Streets, and Bridges, Section 304. Why is the rule inapplicable in the present case?

The rights and duties of the parties cannot be allocated by summary judgment until this basic fact is established with certainty.

I would remand for further proceedings.