RICHARDS, Exr., et al., Appellants,

v.

RUBICON MILL CONDOMINIUM ASSOCIATION et al.;
City of Dayton, Appellee; Anderson's Tree–Tech.

[Cite as *Richards v. Rubicon Mill Condominium Assn.* (1995), 100 Ohio App.3d 264.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14666.

Decided Jan. 11, 1995.

*Thomas D. Richards* and *Robert H. Stratton,* for appellants.

*Neil F. Freund* and *Shawn M. Blatt,* for appellee city of Dayton.

WOLFF, Judge.

David P. Richards, as executor of the estate of Tracy B. Richards and individually, Clara Lee Richards, and Amanda K. Richards (hereinafter collectively referred to as "the Richardses") appeal from the judgment of the Montgomery County Court of Common Pleas which dismissed their claim against the city of Dayton ("the city").

The Richardses' amended complaint alleged that on May 28, 1993, Tracy Richards was killed when the "top section" of a basswood tree fell and crushed her car as she was driving on South Main Street in Dayton. The trunk of the

tree was located on the property of Rubicon Mill Condominium Association. The Richardses alleged that the branches of the tree extended beyond Rubicon's property line, through the Dayton Power and Light easement, and "into the air space immediately above South Main Street."

The Richardses filed suit against the property owners, Dayton Power and Light, and the city. The owners and Dayton Power and Light filed answers to the complaint, and the city moved to dismiss the claim against it. The city argued, pursuant to Civ.R. 12(B)(6), that the Richardses failed to state a claim against the city upon which relief could be granted. The Richardses opposed that motion and filed a motion to file an amended complaint with a copy of the proposed amended complaint attached as an exhibit. Relying on the amended complaint, the trial court granted the city's motion and dismissed the Richardses' claim against the city. Because not all of the claims against all of the parties had been determined, the court's judgment entry included a determination that there was no just reason for delay, in accordance with Civ.R. 54(B).

The Richardses appealed the dismissal of their claim against the city. The city moved to dismiss the appeal for lack of a final appealable order, and we denied that motion in a decision and entry filed August 31, 1994. The Richardses assert one assignment of error:

"The trial court erred in granting defendant, the city of Dayton's motion to dismiss pursuant to Rule 12(B)(6) of the Ohio Rules of Civil Procedure for failure to state a claim upon which relief may be granted."

The Supreme Court of Ohio has set forth the standard to be applied in determining whether a complaint has failed to state a claim upon which relief may be granted. The syllabus in *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, states:

"In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted * * *, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery."

Further, in construing the complaint, the court " 'must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party.' " *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1065, quoting *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756.

The Richardses' claim against the city is based upon the city's statutory liability for "injury, death, or loss to persons * * * caused by [the city's] failure to keep public roads, highways, streets, [or] avenues * * * within the [city] open, in repair, and free from nuisance." R.C. 2744.02. The city moved to dismiss the claim because the original complaint failed to allege that any portion of the tree,

the alleged nuisance, was within its control. In response, the Richardses filed an amended complaint that added an allegation that the branches of the tree extended "into the air space immediately above South Main Street in the City of Dayton." The relevant paragraphs of the Richardses' amended complaint follow:

"11. On Friday, May 28, 1993, a visibly diseased and decayed Basswood tree, existed on the common area of Rubicon along the property line immediately adjacent to the northbound lanes of South Main Street, Dayton, approximately 163 feet south of the intersection of South Main Street and Stonemill Road, and approximately 25 feet from the easternmost curb lane of South Main Street * * *. The Basswood Tree had been in a diseased and decaying state for more than ten (10) years prior to May 28, 1993.

"12. Prior to Friday, May 28, 1993 the Basswood tree was between 65 and 75 feet in height, with the branches of the Basswood tree radiating out from its trunk and extending 30 to 40 feet in a westerly direction, beyond the property line of Rubicon, through the DP & L Easement and extending into the air space immediately above South Main Street in the City of Dayton.

"13. On the evening of May 28, 1993, the Basswood Tree, due to its advanced diseased and decayed state, its size, and its close proximity to a highly traveled urban Thoroughfare in the City of Dayton (South Main Street), constituted a 'public' and 'private' nuisance, a highly dangerous condition and posed an unreasonable risk of harm to individuals using South Main Street.

"* * *

"15. At approximately 10:50 p.m. the evening of Friday, May 28, 1993, Decedent was lawfulling [sic] driving her 1980 Saab north in the easternmost lane of South Main Street and was immediately adjacent to Rubicon, when, suddenly, without warning and without any negligence on the part of Decedent contributing thereto, the top section of the Basswood Tree fell onto the top of Decedent's car, immediately crushed the roof of the car and fatally injured Decedent, causing her death."

In its judgment entry, the trial court correctly noted that a municipal corporation's duty to keep roads free from nuisance has long been held to extend to "conditions located not only upon but above the surface of such streets, where such * * * conditions interfere with, or make dangerous, travel thereon." *Yackee v. Napoleon* (1939), 135 Ohio St. 344, 14 O.O. 231, 21 N.E.2d 111, paragraph one of the syllabus. In a recent discussion of the duty owed by a political subdivision, the Supreme Court of Ohio held:

"The roadway, the space immediately above the roadway, the shoulder, the berm, and the right-of-way are all under the control of the political subdivision. See present R.C. 4511.01(UU)(2). The township has a duty to keep the areas

within its control free from nuisance, *i.e.*, conditions that directly jeopardize the safety of traffic on the highway. Where the township fails in its duty, it may be liable for injuries proximately caused by the nuisance.

"* * * The relevant focus is on the *effect* of the obstruction on the highway's safety, not on the *nature* of the particular obstruction." (Emphasis *sic*.) *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.* (1992), 63 Ohio St.3d 318, 322–323, 587 N.E.2d 819, 823.

In its determination that the Richardses failed to state a claim upon which relief could be granted, the trial court relied on paragraph 11 of their amended complaint, quoted above. Paragraph 11 describes the location of the trunk of the tree, which was solely on the property of Rubicon Mill Condominiums. If that was the only description of the location of the tree, as it was in the original complaint, then, arguably, the complaint may not have been sufficient to establish that the city had a duty to prevent the tree from falling onto the street. See *Strunk v. Dayton Power & Light Co.* (1983), 6 Ohio St.3d 429, 431, 6 OBR 473, 475–476, 453 N.E.2d 604, 606, as modified by *Manufacturer's, supra,* 63 Ohio St.3d at 322, 587 N.E.2d at 823 (placement of light pole adjacent to roadway did not jeopardize ordinary traffic); *Anderson v. CSX Transp., Inc.* (1991), 74 Ohio App.3d 365, 369–370, 599 N.E.2d 278, 280 (city had no duty where alleged nuisance was wholly located on property adjacent to road and did not extend onto road or other area for which city was responsible); *Durham v. Amherst* (1988), 51 Ohio App.3d 106, 554 N.E.2d 945 (municipality had no duty to remove diseased tree located on private property).

However, we need not determine whether the description of the tree in paragraph 11 of the amended complaint viewed in isolation was sufficient to state a claim upon which relief could be granted, because paragraph 12 of the amended complaint expressly alleged that the tree extended "into the air space immediately above South Main Street." As decided in *Yackee* and *Manufacturer's, supra,* the city's duty to keep its streets free from nuisance extends to conditions above the surface of the streets which make the streets unsafe for their ordinary use. See, also, *Strunk, supra;* 1961 Ohio Atty.Gen.Ops. No. 2210 (municipal corporation has duty to remove dead tree on private property where limbs overhang public street). Presuming that the allegations in the amended complaint are true, making inferences in favor of the Richardses, and reading the amended complaint in its totality, we hold that the amended complaint states a claim that the city failed to meet its duty to keep the areas within its control free from nuisance.

The city's arguments against such a holding are not persuasive. Initially, the city argues that "[a]lthough plaintiffs alleged branches of the tree

extended westwardly into the air space above South Main Street in the City of Dayton, there was no allegation, nor has there ever been an allegation, that these branches, as they *existed within the air space,* constituted a nuisance or affected the physical condition of the road." (Emphasis *sic.*) This argument interprets the allegations in the amended complaint too narrowly. Under Ohio's system of notice pleading, the complaint need only put the city on notice of the nature of the claim against it. Civ.R. 8(A) and (E); *Salamon v. Taft Broadcasting Co.* (1984), 16 Ohio App.3d 336, 338, 16 OBR 385, 387, 475 N.E.2d 1292, 1295. Further, to succeed on a Civ.R. 12(B)(6) motion to dismiss, it must be beyond doubt that *no* set of facts could be proved at trial that could support a finding that the city was liable. *O'Brien, supra.* The Richardses' amended complaint clearly put the city on notice of the nature of the claim against it, and, making inferences in favor of the Richardses, it is certainly possible that the Richardses may be able to prove that the diseased state of the tree rendered South Main Street unsafe for ordinary travel and, thus, a nuisance.

The city also argues that "there is *no* allegation in this case that the tree was 'overhanging' Main Street. Rather, the only allegation contained in plaintiffs' amended complaint [*sic*], is that branches of the tree 'extended' in a westwardly direction, beyond the property line and into the air space above South Main Street." (Emphasis *sic.*) To the extent that the city appears to be inviting this court to impose a requirement that the word "overhanging" be used in a complaint rather than a phrase with virtually the same meaning, we decline the invitation. Such a requirement would contravene the policy behind notice pleading and would serve no purpose other than allowing the city to avoid its potential liability in this action because of an insignificant semantic distinction.

In conclusion, the Richardses' amended complaint gave the city notice of the nature of the claim against it, and the allegations in the complaint were sufficient to state a claim upon which relief may be granted. Thus, the trial court erred in dismissing the Richardses' claim against the city pursuant to Civ.R. 12(B)(6). The assignment of error is sustained.

The judgment of the Montgomery County Common Pleas Court will be reversed, and the matter will be remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

BROGAN and FREDERICK N. YOUNG, JJ., concur.